## LACHES IN AVOIDING FORFEITURE OF A LEASE.

Circuit Court of Cuyahoga County.

THE ARMY & NAVY HALL COMPANY V. F. A. BECKWITH ET AL.

Decided, March 10, 1902.

*Forfeiture—Tenant May Lose Right to Avoid Forfeiture by Laches.*

Where a tenant has acquiesced in a forfeiture of his lease for a period
of three months, during which time portions of the premises have
been leased to other lessees and by them sub-leased, it is then too
late to ask the aid of a court to avoid the forfeiture.

*Meyer & Mooney,* for plaintiff.

*Goulder & Holding, White, Johnson & McCaslin* and *Brady
& Cashman,* contra.

HALE, J.; CALDWELL, J., and MARVIN, J., concur.

Under the issues in this case we are called upon to say
whether the forfeiture or attempted forfeiture of a lease shall
be set aside and the lessee restored to its rights under the lease.

The lease bears date of April 1, 1892, and was by C. S.
Britton and others to the Army & Navy Hall Company for a
period of twenty-five years at a rental specified in the lease.

The lease contained this clause:

"*And it is mutually agreed* by the parties aforesaid, for them-
selves, their heirs, executors and administrators, successors, and
assigns respectively, that if at any time the rent, taxes or assess-
ments aforesaid, or either of them, or any part thereof, shall be
in arrear and unpaid for the period of thirty (30) days after
becoming due, or if any of the covenants and agreements shall
not be performed as herein stipulated to be performed by the
second party, the first party, their heirs, assigns, executors or
administrators, at any time after such delinquency shall have
occurred shall have full right without demand of payment or
notice, to enter upon the above described premises, and take
possession thereof, and bring suit for and collect all rents,
taxes and assessments which shall have accrued up to the time
of such entry, and from thenceforth this lease shall become
void to all intents and purposes whatever, at the election of the

first party, and all improvements made on said premises shall be forfeited.''

The taxes falling due on June 20, 1899, and the rent becoming due July, 1899, were unpaid, and on the 28th day of July, 1899, prior to the expiration of the thirty days in which the lessors might enter upon the premises, this notice was served upon the lessees:

''You are hereby notified that unless you pay to us on or before August 8th, 1899, the amount of rent due or which shall become due before that date, together with all taxes and assessments upon the building occupied by you under the lease of April 1st, 1892, we will upon that day take possession of said building under the terms of said lease.''

On the 28th of August, 1899, the lessees having taken no notice of the notification already referred to, *this* notice was served upon them:

''You having failed to pay the rental for the months of June and July, 1899, and the last half of 1898 taxes in accordance with the terms of our lease to you, dated April, 1892, recorded May 20, 1892, Vol. 16, p. 20, Cuyahoga county records, and said defaults having continued for more than thirty days, you are hereby notified that on account of said breaches, we, under and by virtue of the authority given by said lease, elect to and do hereby declare said lease forfeited and by virtue of the same authority, we take possession of said premises and all improvements thereon.''

This notice was served upon Mr. Hessler, who was then president of the Army & Navy Hall Company.

It was contended on the part of the lessees, that Mr. Hessler offered to pay the rent by check. That is denied by Mr. Britton, who served the notice. Looking at the testimony of the two, we are satisfied that something was said about a check by Hessler to Britton, but there was no offer to give to Britton his check; in terms no tender made, and the parties separated under such conditions as, we think, the tender of the check should have no particular significance in the determination of this action.

On the 28th day of August Britton took possession of the leased premises and has ever since been in possession thereof.

Some twenty days or more after the attempted forfeiture of this lease by Britton, the directors of the Army & Navy Hall Company held a meeting in which the subject-matter of the forfeiture of this lease came up for consideration. The chairman stated that all efforts to sub-let or sub-lease the hall under the company's lease were futile, and that the owner had taken possession of the property by reason of the failure of the company to pay the rent of the months of July and August and the half-year's tax due in June. It was moved by Conrad and seconded by Barnes that G. D. Barnes be authorized to sell the chairs in the lower hall and such other property as he can sell for the benefit of the Union Loan & Building Company, which held a mortgage thereon. The formal statement was prepared by the secretary and by vote of the directors sent to the post. ·

The Army & Navy Hall Company was a corporation. The Army & Navy Post was a different organization.

The Army & Navy Hall Company held the lease and it had sub-let to the Army & Navy Post certain privileges under that lease, and this is the statement that was authorized to be sent to the Army & Navy Post:

"It is with regret that the directors of the Army & Navy Hall Company notify you that the lease of the Army & Navy Hall Company has become forfeited to the owners of the property and they have taken possession thereof owing to the unfortunate fact. It was found to be impossible to dispose of it or sub-let it without the owners' consent, which could not be procured. The owners consent that the post can retain possession of the upper floor until January 1st and thereafter, if desired, upon such terms as may be made between the post and Mr. C. F. Britton, who was one of the owners and the managing owner."

Now it will not be disputed that, if after this attempted forfeiture of the lease by the lessors, the Army & Navy Hall Company had given express consent to the forfeiture and turned over voluntarily the possession of these premises to the lessors, the court would not interpose to set aside the forfeiture thus consented to.

On the 14th day of September, 1899, twenty days after this forfeiture, the owners of the building leased a portion of the

premises to one Wood for a term of five years from October 1st, 1899, to September 30th, 1904, at a stipulated rental. This lease on the 4th day of October, 1899, was assigned to the Calumet Company by Wood and that company immediately took possession of that portion of the premises assigned to it, and expended in alterations some five thousand dollars in fitting up the premises for the business it proposed to prosecute thereon.

On the 14th day of December, 1899, the owners of the building, Britton and others, leased to the Retail Grocers' Association a portion of the premises that was covered by this lease, for a period of one year, and, on the 5th day of January, 1900, the Army & Navy Hall Company, the original lessees, took a lease for a portion of the premises from the Retail Grocers' Association.

The Army & Navy Hall Company took no steps to prevent any of these contracts on the part of the owners of the building or in any way to interfere with the lessors or the owners of that property until some time in December. Then the matter was agitated in meetings of the Army & Navy Hall Company, and, on the 2d day of January, 1900, that company undertook to make an account of the rents received by the owners of the building after the attempted forfeiture of the lease and made a tender of the remainder claimed to be due the lessors.

On the 5th day of January, more than three months after the attempted forfeiture, this action was commenced. At that time the owners of the building had made new leases to other lessees; these lessees had sub-let portions of the property rented to them—all this had been done without the slightest attempt to interfere on the part of the Army & Navy Hall Company.

These transactions, in legal effect at least, are equivalent to an express consent on the part of the Army & Navy Hall Company to the forfeiture of that lease. While courts are supposed to be adverse to forfeitures and will seize upon the slightest circumstance to avoid forfeiture, we know of no case in which courts have set aside a forfeiture in favor of a party who has expressly consented to the same.

We feel compelled to dismiss this petition.

The decree of the court will be for the defendants.